UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

JOHN B.[1]

        Plaintiff,

v.

COMMISSIONER,
Social Security Administration,

        Defendant.

Case No. 6:18-cv-00235-JO

OPINION AND ORDER

JONES, Judge:

John B. (Plaintiff) seeks judicial review of the final decision by the Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits under Title II of the Social Security Act (the Act). This court has jurisdiction to review the

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member(s).

1 -OPINION AND ORDER

Commissioner's decision pursuant to 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## BACKGROUND

Plaintiff was born in 1985. On July 4, 2014, Plaintiff drove an all-terrain vehicle at high speed while intoxicated and collided with a tree. Tr. 256, Tr. 294. The impact threw Plaintiff, who was not wearing a helmet, twenty feet and fractured both femurs, left forearm, cervical spine, and facial bones, and caused a traumatic brain injury. Tr. 294, Tr. 601. Plaintiff underwent multiple surgeries and was hospitalized until August 25, 2014. Tr. 305.

In August 2014, Plaintiff applied for disability insurance benefits, alleging disability because of chronic pain and cognitive problems. After the agency denied Plaintiff's claim, Plaintiff received a hearing before an Administrative Law Judge (ALJ) in March 2017. In June 2017, the ALJ issued his decision, finding Plaintiff not disabled. Tr. 13-27. After the Appeals Council denied Plaintiff's request for review, Plaintiff timely filed this action seeking judicial review of the denial of benefits.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). When the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's decision if it is

"supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).

## THE ALJ'S FINDINGS ON THE FIVE-STEP SEQUENTIAL INQUIRY

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ uses a five-step sequential inquiry. *See* 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 2014, the alleged onset date. Tr.15.

At step two, the ALJ found Plaintiff had the following severe impairments: "fractures (legs, arm and cervical spine), organic brain syndrome and chemical dependency." Tr. 15.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 16. The ALJ then assessed Plaintiff's residual functional capacity (RFC), finding that Plaintiff could "perform the full range of light work as defined in 20 C.F.R. § 404.967(b) except the claimant can stand and walk four hours in an eight-hour workday, and sit for six hours in an eight-hour workday. The claimant can perform simple, routine tasks requiring a reasoning level of 1 or 2." Tr. 18.

At step four, the ALJ found Plaintiff could not perform any past relevant work. Tr. 25.

At step five, the burden of production shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience. *Bustamonte v. Massanari*,

262 F.3d 949, 953-54 (9th Cir. 2001); *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999). Here, based on the testimony of a vocational expert, the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy, including the representative occupations of photocopy machine operator; office helper; and assembler, small products I. Tr. 26. The ALJ therefore found Plaintiff had not been disabled from July 2014 until June 2017, the date of the ALJ's decision.

## DISCUSSION

Plaintiff argues that the ALJ erred in (1) not giving proper weight to the medical opinions of Sushanth Nayak, M.D., and William McConochie, Ph.D.; and (2) failing to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

### I. The ALJ's Evaluation of Medical Evidence

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, and must provide specific and legitimate reasons for rejecting contradicted medical opinions. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

#### A. Dr. Nayak's Responses to the Medical Evaluation Questionnaire

On July 13, 2015, Dr. Nayak completed a Medical Evaluation questionnaire sent by Plaintiff's counsel. Tr. 614-18. Dr. Nayak had seen Plaintiff three times, first on April 27, 2015. Tr. 24; Tr. 637-45. The ALJ gave little weight to Dr. Nayak's questionnaire responses, although

the ALJ discussed and generally accepted Dr. Nayak's progress notes on Plaintiff's treatment from April until December 2015. Tr. 20.

In his responses to the questionnaire, Dr. Nayak stated that he diagnosed chronic neck, leg, and jaw pain, and knee arthritis. Tr. 614. He stated that Plaintiff "has to lie down and rest for at least 10 to 15 min every hour." Tr. 615. Dr. Nayak also stated that Plaintiff would need unscheduled ten- to fifteen-minute breaks during an eight-hour workday "at least every couple of hrs." Tr. 617. Dr. Nayak indicated that Plaintiff could sit for thirty minutes at a time and walk or stand ten minutes at a time, for a total of six hours of sitting and two hours of standing or walking during an eight-hour day. Tr. 616.

The ALJ found that Dr. Nayak's questionnaire responses were "unsupported with explanations or objective evidence" and "internally inconsistent." Tr. 24. An ALJ may reject a physician's opinions based on internal inconsistencies or inconsistencies between the opinions and other evidence in the record, or on other factors the ALJ deems material to resolving ambiguities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). An ALJ "'need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009)).

I agree with the Commissioner that the ALJ reasonably found that Dr. Nayak's progress notes "show medical management and do not contain detailed clinical examinations or findings" on Plaintiff's limitations. Def.'s Br. 6, ECF No. 19. Dr. Nayak's progress notes generally repeat Plaintiff's complaints of unspecified leg pain, without providing clinical findings indicating why Plaintiff would need to take fifteen-minute breaks every hour.

As to Plaintiff's right knee pain, Dr. Nayak diagnosed early onset osteoarthritis, which he treated with steroid injections. Tr. 641-42 (June 2015 steroid injection); Tr. 666 (December 2015 steroid injection). The injections reduced Plaintiff's pain. Tr. 643 (July 13, 2015 report by Dr. Nayak indicating right knee pain "seems to be improved"); Tr. 645 (August 3, 2015 report by Dr. Nayak noting Plaintiff said he benefitted from steroid injection). Dr. Nayak recommended continued physical therapy to treat Plaintiff's right knee pain.

I conclude that the ALJ reasonably relied on discrepancies between Dr. Nayak's questionnaire responses and Dr. Nayak's own progress notes as specific and legitimate reasons for rejecting Dr. Nayak's medical opinion. "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1041 ("The incongruity between Dr. Nachenberg's Questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting Dr. Nachenberg's opinion of Tommasetti's limitations.").

The ALJ also cited internal inconsistency as a reason to discount Dr. Nayak's questionnaire responses. The ALJ referred to Dr. Nayak's response that Plaintiff's impairments would "never" interfere with his ability to complete eight-hour workday, with Dr. Nayak adding the phrase "because of chronic pain" in a handwritten note. Tr. 618. The ALJ understandably found Dr. Nayak's response "internally inconsistent with the rest of the evaluation." Tr. 24. Plaintiff argues that Dr. Nayak misread the question and meant to answer that Plaintiff would never be capable of working an eight-hour day because of chronic pain. Pl.'s Br. 11-12, ECF No. 16. The Commissioner responds that Dr. Nayak's meaning is "contextually clear," and that in any event Plaintiff's counsel provided the questionnaire and failed to ask Dr. Nayak to clarify his

response. Def.'s Br. 7. The ALJ did not err in relying on this internal inconsistency as one reason to discount Dr. Nayak's responses.

The ALJ also found that Dr. Nayak's questionnaire responses relied primarily on Plaintiff's own reports rather than on independent clinical findings. Tr. 24. Because the ALJ reasonably discounted Plaintiff's subjective symptom testimony, as discussed below, this is an additional reason supporting the ALJ's rejection of Dr. Nayak's questionnaire responses. *Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."). I conclude that clear and convincing evidence in the record supports the ALJ's decision to give little weight to Dr. Nayak's questionnaire responses.

### B. Dr. McConochie's Neuropsychological Evaluation

On a referral from Disability Determination Services, Dr. McConochie performed a neuropsychological evaluation of Plaintiff in January 2015. Tr. 601-08. Dr. McConochie found that Plaintiff "had good attention and concentration for test and interview tasks." Tr. 603. Plaintiff's test scores indicated an average full-scale IQ, "commensurate with his history of success in high school and at the community college level." Tr. 605. Dr. McConochie found that Plaintiff's memory functioning was "in the mild intellectual disability range." Tr. 605.

The ALJ generally accepted Dr. McConochie's evaluation, finding that "mild to moderate limitations due to memory deficits are consistent with the record." Tr. 23. However, the ALJ did not accept Dr. McConochie's assessment of "'significant' brain damage affecting memory to a 'significant' degree," finding that this assessment was "contrary to the memory function testing which, according to Dr. McConochie, was in the mild intellectual disability range, his average intellectual functioning, and Trails Testing, which was not suggestive of a serious brain injury."

Tr. 23. The ALJ also noted that Dr. McConochie did not "explicitly list a residual functional capacity, addressing the claimant's behavior and frequency of his problems, making it of limited value in terms of functional disabilities." Tr. 23.

Plaintiff contends that the ALJ failed to explain how the results of the overall IQ testing and the Trail Making Test "could contradict the results of the WMS-IV, which tests memory functioning." Pl. Br. 15. However, the ALJ did describe why he found Dr. McConochie's findings on Plaintiff's memory deficits to be contradictory. Tr. 23. The ALJ noted that Dr. McConochie found that because Plaintiff's auditory and delayed memory scores were in the mild to moderate intellectual disability range, despite his overall average score, there was a "strong suggestion in his scores of significant brain damage affecting memory to a clinically significant degree." Tr. 606. In contrast, Dr. McConochie also found that Plaintiff's performance on the Trail Making Test and Aphasia Screening Test was "not suggestive of serious brain injury." Tr. 606.

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Here, the ALJ based his resolution of the conflict on an accurate summary of Dr. McConochie's evaluation. This court must affirm an ALJ's reasonable resolution of a conflict in the medical evidence, even if a contrary resolution would also be reasonable. *See id.* (the court may not substitute its judgment for the ALJ's when evidence could reasonably support affirming or reversing a decision).

The ALJ's findings on the medical opinions of Drs. Nayak and McConochie were based on substantial evidence in the record. I conclude that the ALJ did not err in his assessment of the medical evidence.

## II. The ALJ's Assessment of Plaintiff's Testimony

### A. Legal Standards for Evaluating a Claimant's Testimony

Because there is no affirmative evidence of malingering here, the ALJ may discount Plaintiff's testimony about his symptoms "only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). Under Social Security Ruling (SSR) 16-3p, "subjective symptom evaluation is not an examination of an individual's character," and the ALJ must consider all evidence in the record when evaluating the intensity and persistence of symptoms. SSR 16-3p, available at 2016 WL 1119029, at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The ALJ may consider evidence such as inconsistent statements, testimony that appears less than candid, and an unexplained failure to follow a prescribed course of treatment. *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 587, 602-04 (9th Cir. 1989).

### B. Plaintiff's Statements About His Limitations

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected" to cause some of his alleged symptoms, but also found Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 19. I conclude that substantial evidence supports the ALJ's findings.

Plaintiff submitted a Function Report dated September 1, 2014. Tr. 189-96. The ALJ found that Plaintiff's 2014 Function Report was not relevant to determining disability because the

Report described Plaintiff's limitations while he was undergoing rehabilitation less than eight weeks after his accident. The ALJ found that the medical record showed Plaintiff's condition had improved significantly since September 2014 as he recovered from his severe injuries. Tr. 19-20. I conclude that substantial evidence supports the ALJ's finding that the 2014 Function Report does not reflect the extent of Plaintiff's impairments as of the hearing date.

The ALJ cited Plaintiff's daily activities in his evaluation of Plaintiff's subjective symptom testimony, finding Plaintiff could "perform a full range of daily activities." Tr. 22. The ALJ noted that Plaintiff, who had moved out of state in 2015, testified "he was driving without any difficulty," "worked on small projects," "could perform household chores, such as loading the dishwasher or vacuuming," and "could ride the bus to medical appointments." Tr. 22. Plaintiff also testified that he "does a lot of reading," and used a computer, cell phone, and social media. Tr. 48, Tr. 57-58.

I conclude that the ALJ adequately explained why he found that Plaintiff's assertions about his limitations were undermined by his testimony about his daily activities. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Although "the ALJ's interpretation of [Plaintiff's] testimony may not be the only reasonable one," it is reasonable and supported by substantial evidence. *Id.* Therefore this court should not second-guess the ALJ's interpretation. *Id.*

Plaintiff argues that the ALJ improperly rejected his testimony on his cognitive deficits. Pl.'s Br. 19-20. Plaintiff cites medical reports showing that he suffered from deficits in safety awareness, insight, and short-term memory. Pl.'s Br. 19 (citing, *inter alia*, Tr. 247, 418, 419, 424, 452). However, almost all of the reports cited by Plaintiff describe his mental condition during the weeks immediately following the accident.[2] I agree with the Commissioner that although

---

[2] Plaintiff also cited Dr. McConochie's evaluation, which is discussed above.

Plaintiff undoubtedly suffered from cognitive problems during his inpatient hospital and rehabilitation treatment, Plaintiff "fails to acknowledge the distinction between [his] summer 2014 functioning and his subsequent improvement between fall 2014 and January 2017, when the record closes." Def.'s Br. 14. The record shows that Plaintiff's mental and physical functioning improved significantly as he recovered from his injuries.

Plaintiff contends that the ALJ erred in finding that Plaintiff's subjective complaints about his limitations in sitting and standing were "not reasonably consistent with the medical evidence." Tr. 19. The ALJ cited medical reports indicating that in October 2014, Plaintiff was discharged in "good/stable condition" from an assisted care facility; in January 2015, Plaintiff had "'graduated' from outpatient therapy"; in April 2015, an orthopedic examination showed that Plaintiff "walked without a significant limp and his knee motion was excellent"; and in February 2016, Plaintiff did not exhibit pain behavior, and was smiling and comfortable. Tr. 20. I conclude that the ALJ reasonably relied on these examination findings, along with other evidence, as specific, clear, and convincing reasons for finding Plaintiff's subjective symptom testimony was contradicted by the medical record.

Plaintiff argues that the ALJ improperly characterized his treatment as "conservative," Pl.'s Br. 19, citing the ALJ's finding that "[a]s of November/December 2014, physical and occupational therapy to work on conditioning and strength was advised, conservative care." Tr. 20. The ALJ was specifically describing Plaintiff's treatment during late 2014 as conservative. Regardless, the ALJ's reference to conservative care does not affect the legal analysis.

Plaintiff contends that the ALJ improperly focused on Plaintiff's truthfulness in reporting prior drug and alcohol use to medical providers. The ALJ noted that Plaintiff denied "any" drug use during 2014 hospital visits, but in 2016 told medical providers that he had used

methamphetamine twice a week "for most of his life." Tr. 21. The ALJ also noted that during Plaintiff's evaluation by Dr. McConochie, he "denied ever having a serious alcohol problem but failed to mention that he was drinking at the time of his accident." Tr. 21. The ALJ's findings are supported by the record. *See* Tr. 494 (Plaintiff denied "any drug use" when he sought narcotic painkillers during a November 2014 emergency room visit); Tr. 691 (September 2016 report from Serenity Lane facility noting Plaintiff stated he had been using methamphetamine once or twice per week); Tr. 603 (Dr. McConochie reported that Plaintiff "did not mention that he was drinking when he had his accident").

In evaluating a claimant's subjective statements, the ALJ may consider evidentiary inconsistencies, including "conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir.2008). The Ninth Circuit has specifically held that an ALJ may reject subjective symptom testimony based on the claimant's "lack of candor" about the use of drugs and alcohol. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ properly discounted the claimant's testimony based in part on her unreliable statements about her drug and alcohol use); *Verduzzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ may use claimant's inconsistent statements about alcohol use to discount testimony). Although Plaintiff argues that SSR 16-3p precludes the ALJ's reliance on this evidence, "an ALJ retains the power under SSR 16-3p to consider evidence that a plaintiff is exaggerating her symptoms." *Dukes v. Berryhill*, No. 3:16-cv-0502-AA, 2017 WL 2292274, at *5 (D. Or. May 24, 2017) (citations omitted). I conclude that ALJ reasonably

relied on inconsistent statements about drug and alcohol use in discounting Plaintiff's statements about his symptoms.[3]

If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Here, the ALJ's findings are supported by substantial evidence in the record and are sufficiently specific to satisfy me that the ALJ did not arbitrarily reject Plaintiff's subjective statements. The ALJ's reasoning is clear and convincing. Accordingly, the ALJ's findings on Plaintiff's subjective symptom testimony are not erroneous. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

I conclude that the ALJ properly evaluated the evidence, including Plaintiff's subjective symptom testimony and the medical reports of Drs. Nayak and McConochie. The ALJ's conclusion that Plaintiff is not disabled is supported by substantial evidence in the record.

## CONCLUSION

The decision of the Commissioner is AFFIRMED and this case is dismissed.

IT IS SO ORDERED.

DATED November 8, 2019.

Robert E. Jones
United States District Judge

---

[3] The ALJ did not consider whether Plaintiff's drug or alcohol use was material to his alleged disability, which could preclude benefits. *See* 42 U.S.C § 423(d)(2)(C); *Chavez v. Colvin*, No.: 3:14-cv-01178-JE, 2016 WL 8731796, at *5 (D. Or. July 25, 2016). Because I conclude that the ALJ's finding on disability was supported by substantial evidence, I need not address this issue.

13 -OPINION AND ORDER